# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 05 CR 340 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| Robert Luce, David Calkins ) | |
| ) | |

## MEMORANDUM AND ORDER

This case involves eleven defendants charged with various crimes for causing publicly-held companies to issue stock to persons in payment for work never performed. Two of the defendants, David Calkins and Robert Luce, have filed numerous pre-trial motions, which the court discusses after a brief summary of the allegations in the indictment.

## BACKGROUND

The indictment charges defendant Frank Custable with scheming with the officers of four companies to distribute millions of shares of stock in those companies to individuals under Custable's control. The distributions were allegedly in payment for "consulting services" or other work when, in fact, no such work had been performed. In exchange, Custable allegedly paid kickbacks in the form of sham loans to the companies. Although Custable is charged with scheming with each of the four companies, the indictment does not charge the four companies or their officers with scheming with each other, and there are no allegations of a conspiracy.

Defendant Calkins was the president of one of those four companies, Pacel Corporation. Of the indictment's 23 charges, just three are directed at Calkins. Count V charges Calkins with wire fraud for a July 16, 2001, fax about where he should send 7.5 million shares of Pacel stock. Count VI charges him with wire fraud for an August 1, 2001, fax about issuing 17.5 million

shares of Pacel stock. Finally, Count VII charges Calkins with wire fraud for a May 23, 2002, fax about issuing 3.2 million shares of Pacel stock.

Defendant Luce was an attorney who represented some of Custable's businesses. In addition to charges of wire and mail fraud, he also faces charges of filing false documents with the Securities and Exchange Commission, as well as obstruction of justice for allegedly interfering with an SEC civil proceeding.

Calkins has filed three pretrial motions. In the first, Calkins asks that his trial be severed from the other defendants' because evidence of the wrongdoing by the officers of the other companies with whom Custable schemed would unfairly prejudice him. Second, Calkins asks for a Bill of Particulars because, he contends, most of the indictment alleges conduct by the defendants generally, leaving him unable to discern exactly what charges he must defend. Finally, Calkins asks the court to compel the government to disclose all communications between the SEC and the U.S. Attorney's office or any other law enforcement agency.

Luce has filed eight pretrial motions, including (1) a motion for notice of the government's intent to use evidence of other crimes or wrongs; (2) a motion for the disclosure of favorable evidence as required by *Brady v. Maryland*, (3) a motion for the preservation of notes and transcripts of investigators' interviews of witnesses; (4) a motion to produce all recordings made of or about Luce; (5) a motion to inspect the government's evidence; (6) a motion for the early return of trial subpoenas; (7) a motion to permit attorneys to questions prospective jurors during *voir dire*; and (8) a motion for leave to file additional pretrial motions even though the deadline has passed.

The court will address each motion in turn.

# ANALYSIS

**Calkins' Pre-Trial Motions**

*Motion for Severance [85-1]*

Federal Rule of Criminal Procedure 8(b) permits joinder of defendants "if they are alleged to have participated in the same act or transaction, or in the *same series of acts or transactions*, constituting an offense or offenses." Fed. R. Crim. P. 8(b) (emphasis added); *United States v. Souffrant*, 338 F.3d 809, 827-28 (7th Cir. 2003). In fact, joint trials are favored because they are efficient, limit inconvenience to witnesses, and avoid delays. *See Souffrant*, 338 F.3d at 828; *United States v. Stillo*, 57 F.3d 553, 556 (7th Cir. 1995).

Nevertheless, in some circumstances a consolidated trial may prejudice the defendant or the government. In that case, Rule 14(a) permits the court to order separate trials if "the joinder of offenses or defendants . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); *Souffrant*, 338 F.3d at 828. However, the mere existence of prejudice does not demand severance. To the contrary, severance should be granted only in the face of a "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Olson*, 450 F.3d 655, 677 (7th Cir. 2006). Courts enjoy wide discretion in determining whether or not the risk of prejudice is serious enough to warrant severance. *Souffrant*, 338 F.3d at 828.

Calkins argues that he is entitled to severance because evidence of Custable's schemes with the officers of the other companies will prejudice him. Specifically, he contends that the cumulative effect of evidence that the other officers schemed with Custable will cause a spillover effect that will lead jurors to conclude that he must have also schemed with Custable. According

to Calkins, the spillover effect would be unfair because the indictment does not allege a conspiracy or any other connection between him and the officers of the other companies. In fact, Calkins asserts, he never knew the other officers or that Custable was involved with them.

In support, Calkins relies heavily upon an order entered last year by Judge Grady in *United States v. Glennon*, No. 05 CR 408 (N.D. Ill. Dec. 19, 2005). In *Glennon*, Judge Grady granted a defendant's motion for severance even though in other cases he had "almost always denied severance motions." *Id.* at 1. In some respects, the facts of *Glennon* are remarkably similar to the facts presented in this case. In *Glennon*, defendant Levine was charged with engaging in fraudulent schemes involving five separate construction projects. The remaining defendants, including Glennon, were charged with scheming with Levine separately, but there was no allegation that the other defendants had schemed with each other and no allegation of a conspiracy.

Despite the similarities, one difference distinguishes *Glennon*: Glennon was charged with aiding and abetting. In order to convict, the government needed to prove two propositions: first, that Levine committed fraud; and second, that Glennon aided and abetted that fraud. Therefore, Glennon's guilt was conditioned upon Levine's. That is not the situation in this case. To convict Calkins, the government must prove merely that he engaged in wire fraud; his guilt is not conditioned upon Custable's.

The distinction is critical. Judge Grady found that the risk of unfair prejudice for Glennon was high because, if the government succeeded in showing that Levine engaged in fraud on any of the other projects, the jury would be likely to also find that Levine engaged in fraud on Glennon's project:

> If the jury finds Levine guilty of fraudulent transactions in regard to any of the other four projects, let alone all four of them, it is highly likely that they will also find Levine guilty on [the counts directed at Glennon]. It would be unrealistic to expect that there would be no spillover effect . . . If Glennon were tried jointly with the other defendants on the indictment as it stands, he would by virtue of that joiner be at a substantial disadvantage in regard to the first of the two propositions the government must prove—that Levine is guilty of fraud in regard to [the counts directed at Glennon].

*Glennon*, No. 05 CR 408, at 3-4. In other words, Judge Grady was concerned that if jurors believed that Levine was guilty of fraud on any of the projects, they would excuse the government from proving specifically that Levine was guilty of fraud on Glennon's project, half the government's burden to convict Glennon.

In contrast, Calkins' guilt does not turn on Custable's. Therefore, even if jurors are convinced that Custable is guilty of fraud on other projects, Custable's guilt is not an element of the charge against Calkins. Therefore, there is no risk that jurors will erroneously relieve the government of that portion of its burden.

That is not to say that there is not some risk inherent in every trial with multiple defendants that jurors will improperly credit evidence against one defendant against the others as well. The court recognizes that risk exists in this case, especially given the fact that other defendants are charged with crimes with which Calkin is not charged, such as obstruction of justice. Nevertheless, the court believes that the risk can be sufficiently minimized with limiting instructions to the jury. Juries are presumed able to capably sort through the evidence against multiple defendants, and to follow limiting instructions to consider evidence against each defendant separately. *See United States v. Phillips*, 239 F.3d 829, 839 (7th Cir. 2001) (denial of motion for severance affirmed where district court "scrupulously reiterated a limiting instruction"

that evidence against one defendant could not be used against other defendant); *see also United States v. Olson*, 450 F.3d 655, 677-78 (7th Cir. 2006) (denial of motion for severance affirmed where district court instructed jury "that the guilt of any person, including [a former co-defendant], is not evidence of the guilt of any other person, specifically the remaining defendants.")

The court is mindful that in *Glennon*, Judge Grady believed that a limiting instruction would be insufficient because it would be tantamount to, as Mark Twain put it, "telling a little boy to go stand in a corner and not think of a white rabbit." However, as discussed above, *Glennon* is distinguishable because the guilt of a co-defendant was an element of Glennon's crime that the government had to prove beyond a reasonable doubt, whereas the guilt of Calkins' co-defendants is not an element of his alleged crimes.

Having reviewed the facts alleged in the indictment, the parties' submissions, and the cases they have cited, the court concludes that any prejudice that may arise as a result of trying the defendants in this case jointly can be sufficiently cured with limiting instructions to jurors and any other appropriate oversight by the court. Therefore, the court exercises its discretion and denies Calkin's motion for severance.

*Bill of Particulars [81-1]*

Glennon requests a bill of particulars because the indictment often describes conduct by the defendants generally, failing to identify specifically what defendant engaged in what conduct. As a result, Glennon argues, it "is unclear from the Indictment which defendants are alleged to have conducted specific activities," which creates a risk of double jeopardy should Glennon be acquitted.

The court may order a bill of particulars when the defendant needs more information than what is contained in the indictment in order to: (1) enable her to prepare a defense; (2) avoid unfair surprise at trial; and (3) preclude a second prosecution for the same offense. *United States v. Fassnacht*, 332 F.3d 440, 446-47 (7th Cir. 2003); *United States v. Caputo*, 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003). Additional information is necessary only if the indictment fails to set forth the elements of the charged offense. *Fassnacht*, 332 F.3d at 447; *Caputo*, 288 F. Supp. 2d at 925. In determining whether the indictment sufficiently sets forth the elements of the offense, relevant factors include: (1) the complexity of the charged offense; (2) the clarity of the indictment; and (3) the degree of discovery available in the absence of a bill of particulars. *Caputo*, 288 F. Supp. 2d at 925.

The court has reviewed the indictment and agrees with Calkins that most of the conduct described within it is attributed to the defendants generally. However, the government has provided Calkins with additional information sufficient to apprise him of the conduct the government will attempt to provide. Specifically, as the government has described in its response to Calkins' motion, it has provided extensive discovery to Calkins that fleshes out the allegations in the indictment. The government also responded to Calkins' requests for additional discovery materials, and gave him an index of all the materials it provided. In addition, government counsel and an FBI agent met with Calkins' counsel "for two hours and explained to him not only the nature of the charges, but the details of how the government expected to prove its case." The government's response goes on to describe the detail it provided to Calkins' counsel, including specific dates, parties and agreements. Calkins does not dispute that the

government provided the discovery described or that it provided the detail alleged during counsels' meeting.

The court has carefully reviewed the government's descriptions of the discovery and indexes it provided, and the conversations that occurred during counsels' meeting, the details of which Calkins does not contest. Based upon its review, the court concludes that the government has provided Calkins with the details to which he is entitled, including the specific conduct through which the government intends to prove the charges against him. In fact, it is hard to fathom what additional detail the government could provide other than disclosure of its witnesses and strategy for trial, information the government need not supply. *See United States v. Richardson*, 130 F.3d 765, 776 (7th Cir. 1997). Accordingly, in its discretion the court denies Calkins' motion for a bill of particulars.

*Motion to Compel [83-1]*

Finally, Calkins asks the court to order the government to disclose all communications between the United States Attorney's office and the SEC. Calkins contends that he is entitled to the requested communications because: (1) the government violated his Fifth Amendment right not to incriminate himself by failing to disclose that he was the subject of a criminal investigation before he made statements to the SEC in a parallel civil investigation; and (2) he is the victim of prosecutorial misconduct.

The following chain of events preceding Calkins' indictment is not disputed. On June 10, 2006, a federal grand jury issued a subpoena to Calkins to produce records regarding Custable, his various associates, and his companies (though Calkins was not served with the subpoena until July 17, 2006). A couple of weeks later, on June 26, 2002, the SEC issued its own subpoena,

directing Pacel Corporation to produce a similar universe of records. On September 16, 2002, the SEC issued a second subpoena, requiring Pacel to produce additional documents. Calkins himself was subpoenaed by the SEC on September 23, 2002, to produce documents regarding Custable. Finally, on October 4, 2002, Calkins gave sworn testimony to the SEC. Prior to testifying, the SEC gave Calkins and his attorney a copy of SEC Form 1622. Among other things, the form advised Calkins of the following:

- "Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency;"

- "You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you;"

- "The Commission often makes its files available to other government agencies, *particularly United States Attorneys* . . . There is a likelihood that information supplied by you will be made available to such agencies where appropriate."

SEC Form 1622, Exhibit 1 to Calkins' Motion to Compel (emphasis added). Other than the general admonitions in Form 1622, the SEC did not specifically confirm to Calkins that he was the subject of a criminal investigation. After reviewing Form 1622, Calkins testified before the SEC for eight hours without ever asserting his privilege against self-incrimination.

Calkins now wants to investigate communications between prosecutors and the SEC to determine whether he was the subject of a criminal investigation at the time he gave his SEC testimony. If he was, Calkins contends that the government obtained his statements to the SEC in violation of his constitutional rights and through "flagrant disregard of individual rights" by abusing "the civil process to gather civil evidence for a criminal prosecution," citing *United States v. Gruenwald*, 987 F.2d 531, 534 (8th Cir. 1993). In the event of such government abuse,

Calkins asserts that the proper remedy is suppression of the improperly-obtained statements. *See United States v. Stringer*, 408 F. Supp. 2d 1083, 1090 (D. Ore. 2006) (dismissing indictment and suppressing statements obtained by the SEC in a civil proceeding without first advising the defendant that he was subject of criminal investigation); *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1140 (N.D. Ala. 2005) (suppressing statements obtained under identical circumstances).

Calkins' arguments are unavailing. First, Calkins' Fifth Amendment argument is based upon his assertion that at the time he talked to the SEC, he did not know he might be the subject of a criminal investigation. But the uncontested sequence of events undermine his argument. Long before Calkins made statements to the SEC in October 2002, he had received notice that he may be, or become, the subject of a criminal investigation when he was served with the grand jury's subpoena in July 2002 seeking documents about Custable. This was not the case in either *Stringer* or *Scrushy*, where the government affirmatively concealed from the defendants that parallel criminal investigations were being conducted. *See Stringer*, 408 F. Supp. 2d at 1089 (the government engaged in deceit and trickery to keep the criminal investigation concealed."); *Scrushy*, 366 F. Supp. 2d at 1138 (prosecutors worked with SEC attorneys to "keep Mr. Scrushy in the dark regarding the criminal investigation.")

Additionally, SEC Form 1622 specifically advised Calkins that his testimony may be shared with federal prosecutors. The court is aware that the defendants in *Stringer* and *Scrushy* also received copies of Form 1622 prior to their testimony. However, the court declines to adopt the reasoning of those courts trivializing the import of Form 1622's admonitions. The language used in the form is clear and adequately advised Calkins that his testimony may be used in criminal proceedings, especially in light of the July 2002 grand jury subpoena which put him on

notice that he may be the subject of a criminal investigation. Therefore, he cannot establish the foundation upon which his constitutional violation is based, which is that he was unaware of the possibility of criminal charges at the time he talked to the SEC. *See Scrushy*, 366 F. Supp. 2d at 1139 ("When a defendant *knows* that he has been charged with a crime, or that a criminal investigation has targeted him, he can take actions to prevent the providing of information in an administrative or civil proceeding that could later be used against him in the criminal case.")

Alternatively, Calkins contends that his statements should be suppressed because of prosecutorial misconduct, the basis for the courts' decisions in both *Stringer* and *Scrushy*. *Stringer*, 408 F. Supp. 2d at 1089 ("Dismissal of an indictment is warranted if the alleged governmental misconduct is so grossly shocking and so outrageous as to violate the universal sense of justice.") (internal quotation and citation omitted); *Scrushy*, 366 F. Supp. 2d at 1138-39 ("Our justice system cannot function properly in the face of such cloak and dagger activities . . .") But Calkins' argument is one that has been soundly rejected by the Seventh Circuit. *See United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1993) (the doctrine of "outrageous governmental misconduct . . . does not exist in this circuit") As the Seventh Circuit explained in the context of a motion for a new trial, "[p]rosecutorial misconduct may precipitate a reversible error, but it is never in itself a reversible error. *Id.* As applied to the facts of this case, had prosecutorial misconduct violated Calkins' Fifth Amendment rights, then his statement to the SEC would be suppressed, not because of prosecutorial misconduct, but because of the Fifth Amendment. However, no constitutional violation occurred and Calkins' allegation of prosecutorial misconduct does not provide him an alternative means of suppression. *Id.*

**Luce's Pre-Trial Motions**

*Motion for Notice of Intention to Use 404(b) Evidence [42-2]*

Luce seeks notice of the government's intention to use other crimes, wrong, or acts evidence. Federal Rule of Evidence 404(b) prohibits the use of evidence of other crimes, wrong or acts to prove character, although it can be used for other relevant reasons such as proof of motive, opportunity, preparation, or identity. *United States v. Smith*, 103 F.3d 600, 602 (7th Cir. 1996). However, before using 404(b) evidence, the government must first provide the defendant with reasonable advance notice. Fed. R. Evid. 404(b).

The government has acknowledged its responsibility under Fed. R. Evid. 404(b) and it appears the parties differ only on the date by which the government should make its disclosure—the government commits to disclosing the information ten days before trial, while Luce wants the information 60 days before trial. The rule requires only reasonable notice, and the court believes that requiring the government to disclose the information two months before trial is unreasonable. The court also finds that requiring the government to disclose the information thirty days before trial is reasonable and affords Luce sufficient notice.

*Motion for Production of Favorable Evidence [42-3]*

Luce has moved for disclosure of all favorable evidence including any exculpatory and impeaching information. In response, the government has acknowledged its continuing obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), to disclose information that may be exculpatory or impeaching and has committed to producing that evidence. Based upon the government's commitment to fully discharge its obligations under *Brady*/*Giglio* and produce the documents to which he is entitled, Luce's

motion is denied as moot. *See United States v. Alex*, 791 F. Supp. 723, 729 (N.D. Ill. 1992) ("the government's promise to comply with the dictates of *Brady* renders [the defendant's] motion moot").

As far as the documents Luce requests beyond what is required under *Brady* and *Giglio*, such as requests for *any* documents regarding him and *any and all* personnel files for government witnesses, the request is overly broad. The government is under no obligation to produce such information. *United States v. Balogun*, 971 F. Supp. 1215, 1236 (N.D. Ill. 1997) (a defendant "is not entitled to know all the evidence the government intends to produce") (internal quotation and citation omitted).

*Motion for Preservation and Production of Law Enforcement Notes [42-4]*

Luce has moved for the preservation of notes prepared by investigators in the course of interviewing prospective witnesses. The government agrees with Luce that investigators' notes should be preserved, and therefore this portion of Luce's motion is denied as moot.

Luce also seeks an order requiring the government to produce copies of those notes of investigators' interviews, as well as any transcriptions of the interviews. However, when agents have incorporated their notes into an official report, known as a Form 302, a defendant is not entitled to production of the original notes. *See United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997). Beyond that, Luce is not entitled to production of the notes and this portion of Luce's motion is denied.

As for the transcripts, the only drafts to which Luce is entitled are drafts prepared by witnesses who will testify about the accuracy of any government transcripts used at trial. *See United States v. Bailey*, 689 F. Supp. 1463, 1468-70 (N.D. Ill. 1987) (a defendant is entitled to

"*only* those drafts which have been prepared by a government witness who will testify as to the accuracy of a final transcript used as an aid for the jury by the government during that witness' testimony"). The government has committed to produce any such drafts, and therefore this portion of Luce's motion is denied as moot.

*Motion to Produce [42-5]*

Luce also requests the production of any recordings and corresponding transcripts of conversations in which Luce was a participant or subject, or which contain any statement that Luce is alleged to have adopted. The government contends that it has already provided copies of those conversations, as well as draft transcripts. It also commits to produce final transcripts to be used at trial. In light of the government's response, Luce's motion is denied as moot.

*Motion to Inspect Evidence [42-6]*

Luce requests access to inspect any physical or tangible evidence in the government's possession. The government contends that it previously advised Luce that the material is available for inspection. Based upon that representation, Luce's motion is denied as moot. Luce also appears to request that the government provide him with copies of any "items as he may designate." The government is not obliged to provide free copies to criminal defendants who have not demonstrated indigence, and therefore the request for copies is denied.

*Motion for Early Return of Subpoenas [42-7]*
*Motion for Attorney Voir Dire [42-8]*

Luce's motion for the early return of trial subpoenas is granted. Luce's motion for attorney *voir dire* of prospective jurors is granted, but counsel will not have 30 minutes as

requested in Luce's motion, but rather the length of questioning will be determined by the court on the day of *voir dire*.

*Motion for Leave to File Additional Pre-Trial Motions [42-1]*

Leave to file additional pre-trial motions is denied. Should Luce wish to file additional pre-trial motions, he should file a motion for leave explaining why he could not have timely filed the proposed additional pre-trial motions.

**CONCLUSION**

Accordingly, the court denies motions [42-1], [42-3], [42-4], [42-5], [42-6], [81-1], [83-1], and [85-1]. The court grants motions [42-2], [42-7]& [42-8], except that (1) the government need not notify Luce of its intent to use 404(b) evidence until thirty days before trial; and (2) the court will determine the amount of time counsel is afforded for *voir dire*.

ENTER:

DATE: September 29, 2006

*Blanche M. Manning*
Blanche M. Manning
United States District Judge